IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02945-MEH

THERESA JEANETTE RICHMOND,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

___

# ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Theresa Richmond appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court **reverses and remands** the ALJ's decision and the Commissioner's final order.

## BACKGROUND

### I.   Procedural History

    Plaintiff seeks judicial review of the Commissioner's decision denying her application for DIB benefits filed on October 17, 2011, claiming arthritis, gout, insomnia, hepatitis C, and eczema

as her disabling conditions. [AR 115-17, 150] After the application was initially denied on January 20, 2012 [AR 54-60], an Administrative Law Judge ("ALJ") upon the Plaintiff's request held a hearing on April 1, 2013. [AR 81]. Plaintiff appeared at the hearing, represented by counsel, and testified, as did a vocational expert. [AR 25-41] The ALJ issued a written ruling on April 8, 2013, finding Plaintiff was not disabled since October 17, 2011, because considering Plaintiff's age, education, work experience and residual functional capacity ["RFC"], there were jobs existing in significant numbers in the national economy that Plaintiff could perform. [AR 13-21] The SSA Appeals Council on September 3, 2014, subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-5] *See* 20 C.F.R. § 404.981. Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision. [Docket #1]

## II.     Plaintiff's Alleged Conditions

Plaintiff was born on October 21, 1960; she was less than one week from turning 51 years old when she filed her application for DIB benefits on October 17, 2011. [AR 205-210] Plaintiff has a high school education and past relevant work as a housekeeper/cleaner and nurse's assistant. [AR 38, 147, 151] She claims she became disabled on July 27, 2010 [AR 115] – the day she was fired from a care giver job at an assisted-living facility when she left a resident unattended who then fell and became injured. [AR 28-29] Plaintiff reported that she was limited in her ability to work by "arthritis, gout, insomnia, hepatitis C, and eczema." [AR 115-17, 150]

The medical record begins in August 2009 and ends in September 2012. [AR 200-44] The records show Plaintiff went to Stout Street Clinic and Eastside Family Health for routine checkups

[AR 200-01, 212-14, 233-35, 238-39], an immunization from hepatitis in preparation for her new care giver job [AR 243-44], a colonoscopy to examine her gastrointestinal track [AR 215-30, 241-42], and to be prescribed medication for hot flashes and insomnia [AR 231, 236-37].  No medical records from treating physicians indicate arthritis or symptoms of arthritis.  [AR 200-02, 212-244]

After Plaintiff filed for DIB, she attended a consultative examination on December 22, 2011, with internist Dr. Saada Zubair.  [AR 204-07]  Plaintiff reported to Dr. Zubair that she had arthritis causing pain in all her joints, and eczema since birth.  [AR 204]  She indicated she had good days and bad days regarding joint stiffness and that on a bad day, she could not do much unless she took "something over-the-counter for pain (such as Ibuprofen or Tylenol)." [*Id.*]  Plaintiff told Dr. Zubair that she could sit for 20-30 minutes, stand for no more than one-and-one-half hours, walk for no more than two-and-one-half blocks in half an hour, and lift and carry a maximum of 5-to-10 pounds.  [AR 205]  During the examination, Dr. Zubair noted that Plaintiff sat comfortably and could bend over and take her shoes off.  [AR 206]  Dr. Zubair wrote: "She is alert, awake, but irritable and jumpy as if afraid to be touched.  She complains of pain upon touching any joints and pulls back when touched.  Her affect is somewhat abnormal or unusual."  [AR 205]

However, Dr. Zubair also indicated that Plaintiff had normal range of motion in every joint, with the exception of slight diminishment of motion in the left ankle, and that Plaintiff had normal gait, heel walking, hopping, heel-to-toe walking, coordination, reflexes and senses.  [AR 206.]  Dr. Zubair noted that Plaintiff had "sporadic areas of weakness on the upper and lower extremities, which are nonreproducible.  I am not sure if it is true weakness or lack of effort on part of [Plaintiff].  In any case, I was not impressed by any weakness in the extremities."  [*Id.*]  Regarding Plaintiff's

3

RFC, Dr. Zubair found Plaintiff could lift and carry 25-to-50 pounds; stand and walk for two hours with intermittent sitting and standing for six-to-eight hours per eight-hour workday; sit for one-to-two hours and four-to-six hours with intermittent standing, walking, and sitting in four-to-six hours in an eight-hour workday. [AR 207] The doctor noted that "further workup will be helpful [] such as x-ray, MRI, or an evaluation by an orthopedic specialist" as there were indications of a "possible herniated disk or degenerative disk in the upper lumbar spine, and the lower sacral spine." [AR 206]

Finally, Dr. Zubair concluded:

> This examiner was not impressed by the arthritis that the patient claims by examining the joints in the body [but] blood work is pending. She does have some signs of tenderness in the lumbar spine and some muscular spasm in some areas, positive straight leg raising indicating a disk problem in the upper lumbar spine. Until the blood work is available, my impression remains that most likely the patient has osteoarthritis in the entire spine but mostly in the upper lumbar spine and in the sacral spine area. Otherwise, I did not see any findings that could indicate presence of arthritis or tenosynovitis in any of the other joints of the body.

[AR 207]

The followup laboratory testing of Plaintiff's blood showed a positive, speckled ANA pattern and a high rheumatoid factor, both of which can indicate rheumatoid arthritis. [AR 203] However, these laboratory results were never evaluated by Dr. Zubair.

In January 2012, Dr. Kimberlee Terry provided a consultative examination by examining the evidence of record, including Dr. Zubair's findings. [AR 46-50] Dr. Terry assessed Plaintiff with a severe impairment of a dysfunction of the major joints but found that, despite that impairment, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand, walk, or sit about six hours in an eight-hour workday; and had no postural, manipulative, or environmental limitations.

[AR 48]

### III. Hearing Testimony

The ALJ held a hearing on April 1, 2013. [AR 25-41] Plaintiff testified that on or about March 2012, she took two new jobs that together allowed her to work about 25 hours a week as a care giver. [AR 31, 36] Plaintiff stated that she could stand for two-to-three hours at a time before needing to sit down for about half an hour and then could stand again for two-to-three hours. [AR 31-32] She agreed that kind of activity was consistent with the type of activity she did in her current caregiving jobs. [*Id.*] She also said she could sit up to one and a half hours before she needed to stretch and then could sit again. [AR 32]

A vocational expert ["VE"] testified at the hearing that Plaintiff's caregiver job required medium exertion. [AR 38] The VE noted that Plaintiff could not perform a full-time job of caregiver – her last job – when considering the following: Plaintiff's age, education, and work experience; lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking no more than two hours in an eight-hour workday; and sitting six hours in an eight-hour workday. [*Id.*] However, the VE indicated that a person with Plaintiff's professional experience, even with the above restrictions, could perform occupations that included 465,000 jobs, including those of cashier, assembler of small products, or ticket seller. [AR 38-40]

The ALJ issued an unfavorable decision on April 8, 2013. [AR 13-21]

## LEGAL STANDARDS

### I. SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation

process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See id*. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See id.* If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed RFC prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g).

**II.      Standard of Review**

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact ... are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### ALJ's RULING

The ALJ ruled that while Plaintiff at the time of the hearing was working 25 hours a week at $9 an hour, that did not rise to the level of substantial gainful activity since the amended onset date of her disability, July 27, 2010 (Step One). [AR 16] Further, the ALJ determined that Plaintiff had one severe impairment: chronic lumbosacral strain/spasm. (Step Two). [*Id.*] The ALJ at Step

Two noted as follows:

> The record also contains evidence of other major medical complaints of diffuse joint pain, especially affecting the hands, knees and feet (Exhibit 3F), and a history of hepatitis C (Exhibits 1F, 5F and [6F]).[1] However, these complaints have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual functional capacity over time. Accordingly, these are not severe impairments.

[AR 16]

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 17] The ALJ then determined that Plaintiff had the RFC to perform "medium work as defined in 20 CFR 404.1567(c) except that she is limited to standing and/or walking for a total of 2 hours in an 8-hour day. She is otherwise able to sit for 6 hours in an 8-hour day, and lift and carry up to 50 pounds occasionally and 25 pounds frequently." [*Id.*] In discussing this finding, the ALJ noted Plaintiff's complaints of pain in her hands:

> In addition to back pain, the claimant testified that she has pain in her hands such that they cramp up and drop things. She reports this happens 10 to 12 days out of the month. The claimant takes over-the-counter Tylenol for these symptoms. As noted above, the claimant does not have a medically determinable impairment involving her hands. ... The assessment above is supported by the entirety of the available medical record, including the detailed consultative examination findings and opinion of Saada Zubair, M.D. (Exhibit 3F). Dr. Zubair evaluated the claimant on the basis of her physical complaints in December 2011, at which time the claimant complained primarily of diffuse joint pain, especially affecting the hands and feet in the mornings. ... In any case, the claimant did not have any significant objective findings supportive of her arthritic symptoms, and indeed Dr. Zubair said that he was "not

---

[1]The ALJ incorrectly cited to "56" as an exhibit; however, the Court reasonably assumes the ALJ meant "6F" as there is no "56" exhibit while "6F" is the only remaining exhibit in the medical record and includes more than half of Plaintiff's medical records. [AR 215-244]

8

> impressed" by these complaints. The claimant did exhibit some signs of tenderness in the lumbar spine and some muscular spasm, and he also observed positive straight-leg raise testing thought possibly indicative of a disk problem in the lower spine. No X-rays were taken, however. Based on these findings, Dr. Zubair was of the impression the claimant has osteoarthritis of the spine, but that there were not findings indicating the presence of arthritis or tenosynovitis in any of the other joints of the body. He offered the following work-related restrictions: lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking 2 hours with intermittent sitting and standing for 6 to 8 hours in an 8-hour day; sitting for 1 to 2 hours with intermittent sitting, standing and walking for 4 to 6 hours in an 8-hour day; and, no postural or manipulative limitations. These restrictions appear to be supported by the objective findings on which they are based and are consistent with other available medical findings. Substantial weight has thus been given to this opinion. The only other detailed medical opinion in the record is from the State agency's medical consultant, which essentially finds the claimant capable of light exceptional work activities, but similarly with no postural or manipulative restrictions (Exhibit 2A). To the extent this assessment differs from Dr. Zubair's opinion, greater weight has been given to Dr. Zubair, as this source had the opportunity to personally examine and observe the claimant. ... Those functional limitations suggested as emanating from her knees, hands and feet are rejected because they do not flow from medically determinable impairments.

[AR 18-19 (extraneous information omitted)]

The ALJ went on to determine that Plaintiff was unable to perform her past relevant work (Step Four), and that considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform the jobs existing in significant numbers in the national economy. [AR 19] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under a disability as defined by the SSA. [AR 20-21]

Plaintiff sought review of the ALJ's decision by the Appeals Council on May 14, 2013 [AR 7-8], which was denied [AR 1-6]. Plaintiff timely filed her Complaint in this matter on October 30, 2014. [Docket #1]

## **ANALYSIS**

On appeal, Plaintiff asserts the ALJ failed to adequately develop the record with respect to Plaintiff's impairments, even though the SSA's examining expert deemed the record to be inadequate to fully evaluate the impairments. Opening Brief, docket #16 at 10. Plaintiff also argues the ALJ's RFC is defective as a matter of law based on misapplication of agency grid guidelines that inaccurately led to a conclusion the Plaintiff could perform "medium" work. *Id.* at 3. Thus, Plaintiff concludes the disability denial is not based on substantial evidence.

**A.     ALJ's Failure to Develop the Record**

The ALJ determined that Plaintiff had one severe impairment: chronic lumbosacral strain/spasm. [AR 16] Yet the ALJ found Plaintiff did not have medically determinable issues with regard to arthritis, noting that the evidence indicated only "complaints of diffuse joint pain, especially affecting the hands, knees and feet," but stating "these complaints have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual functional capacity over time." [AR 19-20] Plaintiff argues the ALJ mischaracterized the evidence by overlooking the details shown in exhibit 3F [AR 203-207], which contains laboratory results of the blood work ordered by Dr. Zubair, the SSA's examining physician, which ultimately showed a positive rheumatoid factor that could support a diagnosis of arthritis, and that the ALJ had the obligation to further develop the record as a result. Plaintiff's Opening Brief, docket #16 at 10. Plaintiff notes that Dr. Zubair also recommended further workup such as X-rays, an MRI, or an evaluation by an orthopedic specialist to determine the etiology of Plaintiff's lumbar complaints, which she suspected were due to a herniated disc or disc degeneration. [AR 206] Those further tests

were never ordered, and the results of the blood test were never reviewed by Dr. Zubair, despite the ALJ giving that examining opinion substantial weight. Opening Brief, docket #16 at 10-12.

Defendant counters that Plaintiff's arguments about her rheumatoid arthritis are "ultimately irrelevant to her residual functioning capacity" as Dr. Zubair concluded Plaintiff could perform medium-exertion work. Defendant's Response Brief, docket #17 at 14-15. Defendant further argues "the ALJ is only required to take additional actions to develop the record when he determines that the evidence at hand is insufficient to form a conclusion about a claimant's disability status." *Id.* at 15.

Step Two of the evaluation process requires an ALJ to decide whether the claimant has a severe medically determinable impairment, and regulations require the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled," 20 C.F.R. §§ 404.1520(a)(3). The Tenth Circuit requires the ALJ to discuss "the significantly probative evidence he rejects[,]"*Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996).

Here, it is undisputed that the ALJ rejected Plaintiff's arthritis or "diffuse joint pain especially affecting the hands, knees and feet" [AR 16] in the Step Two assessment for supposed lack of documentary evidence of a diagnosis. An ALJ's rejection of an impairment altogether could be reversible error. "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less. . . . Further, the failure to consider all of the impairments is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citations omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) ("In his RFC assessment, the ALJ must consider the combined

effect of *all* medically determinable impairments, whether severe or not.") (emphasis in original).

Accordingly, the question is whether the disregarded impairments were "medically determinable." *See Railey v. Apfel*, 134 F.3d 383, 1998 WL 30236, at *3 (10th Cir. 1998) (finding that the ALJ's failure to mention plaintiff's back impairment, wrist impairment or respiratory impairment at step two constituted legal error); *see also Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1194 (D. Kan. 2007) ("Therefore, the first consideration at step two is what, if any, medically determinable impairments plaintiff has regardless of the credibility of her allegations of the severity of those impairments.").

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Section 404.1527 provides that a claimant's "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." More specifically, "symptoms" are the claimant's description of his/her own physical or mental impairments; "signs" are anatomical, physiological, or psychological abnormalities that can be observed apart from symptom descriptions and must be shown by medically acceptable clinical diagnostic techniques; and "laboratory findings" are anatomical, physiological or psychological phenomena that can be shown by use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 404.1527.

In a social security disability case, the claimant has the burden to prove her disability. *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). Yet the Tenth Circuit, in *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997), has explained that the ALJ has some burden in developing the record.

> How much evidence must a claimant adduce in order to raise an issue requiring further investigation? Our review of the cases and the regulations leads us to conclude that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. [] Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment. [] Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Id*. at 1167 (internal citations omitted). The standard is one of reasonable good judgment on the part of the ALJ. *Id.* at 1168. The duty to develop the record is limited to "fully and fairly develop[ing] the record as to material issues." *Id*. (citing *Baca v. Dep't. of Health & Human Servs*., 5 F.3d 476, 479–80 (10th Cir. 1993)). The ALJ's "starting place must be the presence of some objective medical evidence in the record suggesting that existence of a condition which could have a material impact on the disability decision requiring further investigation." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing *Hawkins*, 113 F.3d at 1167).

Defendant cites *Howard* for the proposition that the ALJ is not required to more fully develop the record "where nothing in [claimant's] arguments on appeal or the medical record suggested that these impairments required further investigation before an ALJ could determine what functional limitations, if any, resulted from these conditions." Defendant's Response Brief, docket #17 at 15. Yet the claimant in *Howard* "did not allege – and the medical record [did] not suggest – functional limitations flowing from her heart attack [the medical condition for which the ALJ did not seek further records or examination] other than those already acknowledged by the ALJ."

13

*Howard*, 379 F.3d at 949.

Here, unlike in *Howard*, Plaintiff claimed functional limitations flowing from her joint pain. The ALJ, apparently recognizing the need to examine Plaintiff's claims, ordered a consultative examination. [AR 204] The resulting report by the SSA's examining physician, Dr. Zubair, indicated the possibility that the joint pain could have been supported by medically determinable impairments – but more testing was needed, including analysis of blood work. [AR 204-07] The record then demonstrates that results of the blood work ordered by Dr. Zubair showed characteristics consistent with joint pain that may or may not have risen to the level of an arthritis diagnosis but could have validated Plaintiff's complaints of such pain. [AR 203] The laboratory work is included in the record, filed alongside Dr. Zubair's report, yet Dr. Zubair never reviewed the laboratory work, nor did the ALJ make any comment about it or order Dr. Zubair or the agency consultative expert to review the laboratory results and opine on their significance.  [*Id.*] Further, the ALJ did not request any followup on the other diagnostic tests that Dr. Zubair's report suggested "will be helpful" – X-rays, an MRI, or evaluation by an orthopedic specialist – that could reasonably have led to corroboration of Plaintiff's complaints of pain with a medically determinable impairment. [AR 206]

While Dr. Zubair had doubts of Plaintiff's credibility regarding joint pain – as did the ALJ – analysis of the laboratory results could have changed the doctor's and the ALJ's opinion as to the validity of Plaintiff's complaints of chronic and debilitating joint pain. Defendant argues that Dr. Zubair's ultimate RFC conclusion would not have changed from more tests or from analysis of the blood work; yet, the Court is not willing to take that leap as Dr. Zubair did not say that the results

14

of the tests would be immaterial to her analysis. In fact, Dr. Zubair's conclusion presumed a next step would come in the future, noting "[u]ntil the blood work is available, my impression remains ..." [AR 207] The record indicates no one ever reviewed the blood work results, which the ALJ should have ensured happened to develop the record fully given the steps he had already taken to order a consultative examination on which he placed substantial weight. Instead, the ALJ noted the alleged diffuse joint pain but rejected it because "these complaints have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual functioning capacity over time. Accordingly, these are not considered severe impairments." [AR 16]

The record shows that Plaintiff's joint pain required further investigation before an ALJ could have determined what functional limitations, if any, existed as a result of these conditions. Thus the Court finds the ALJ erred. Accordingly, the Court finds that Plaintiff has met her burden to demonstrate her joint pain may have derived from medically determinable impairments shown by medically acceptable clinical and laboratory diagnostic techniques and, therefore, should not have been disregarded at Step Two.

Defendant appears to argue that any errors made by the ALJ at Step Two are harmless. However, "to conclude that error in a disability hearing is harmless, it must be clear that, had the ALJ considered the appropriate material – here the medical evidence of [the challenged impairment] – 'no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Brown v. Barnhart*, 182 F. App'x 771, 773 (10th Cir. 2006) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Based on its review of the record, this Court cannot say conclusively that *no* reasonable administrative factfinder would have found Plaintiff's diffuse joint pain constituted a severe medical impairment. Accordingly, the ALJ's error in omitting the evidence on the record that could have proven the impairment was not harmless. That is, the ALJ's failure to consider the documentation and evidence that reasonably could have led to diagnosis of Plaintiff's joint pain impaired his analyses at Steps Three and Four. He did not take evidence of this possibly severe impairment into account when determining Plaintiff's RFC or whether this impairment, alone or in combination with other impairments, would then be equivalent to any listed impairments so severe as to preclude substantial gainful employment. *See Brown*, 182 F. App'x at 774. Had the ALJ properly considered the laboratory evidence that reasonably could have justified Plaintiff's complaints of joint pain as rising to a medically determinable impairment, it is possible he would have come to a different conclusion. Therefore, upon remand, Plaintiff's credibility must be reassessed in light of the evidence in the record possibly supporting the existence of joint pain as a disabling impairment.

**B.     Remaining Issues**

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 2014 WL 969688, at *2 n.1 (D. Colo. 2014). The Court expresses no opinion as to the Plaintiff's remaining arguments and neither party should take the Court's silence as implied approval or disapproval of the arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."). The Court also does not suggest a result that should be reached on remand; rather, the

Court encourages parties and the ALJ to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citations and quotation marks omitted).

## CONCLUSION

In sum, the Court concludes that the ALJ in this case improperly ignored record evidence of Plaintiff's joint pain and thereby failed to develop the record that reasonably could have revealed a medically determinable impairment at Step Two. The Court thus finds the final decision is not supported by substantial evidence in the record as a whole. Therefore, the ALJ decision that Plaintiff Theresa Richmond was not disabled is **reversed and remanded** for further review and explanation.

Dated at Denver, Colorado this 17th day of August, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge